**ORIGINAL**



# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**LINDA GILBERT,** a citizen of the State of Michigan, individually, and on behalf of all others similarly situated, **PATRICIA GRAVES,** a citizen of the State of Michigan, individually, in her fiduciary capacity as Personal Representative of the Estate of Scott Amedure, Deceased, and on behalf of all others similarly situated, **FRANK AMEDURE, JR.,** a citizen of the State of Michigan, individually, in his fiduciary capacity as Personal Representative of the Estate of Scott Amedure, Deceased, and on behalf of all others similarly situated, and **GEOFFREY N. FIEGER,** a citizen of the State of Michigan,

C.A. No. 03-60185

Hon. Marianne O. Battani

PLAINTIFFS,

-v-



**JOHN D. FERRY, JR.,** individually, and in his official capacity as State Court Administrator of the State of Michigan, **MAURA CORRIGAN,** individually, and in her official capacity as Chief Justice of Michigan, **CLIFFORD W. TAYLOR,** individually, and in his official capacity as an Associate Justice of the Supreme Court of Michigan, **ROBERT P. YOUNG, JR.,** individually, and in his official capacity as an Associate Justice of the Supreme Court of Michigan, and **STEPHEN J. MARKMAN,** Individually, and in his official capacity as an Associate Justice of the Supreme Court of Michigan, jointly and severally,

DEFENDANTS.

---

Richard L. Steinberg (P25862)
RICHARD L. STEINBERG, P.C.
Attorneys for Plaintiffs
615 Griswold Street, Suite No. 1724
Detroit, MI 48226-3990
(313) 962-3738

Margaret A. Nelson (P30342)
Assistant Attorney General
Attorneys for Defendants
State of Michigan
PO Box 30736
Lansing, MI 48909-8236
(517) 373-6434

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ...........................................iii

COUNTER-STATEMENT OF FACTS ............................................................................1

ARGUMENT ................................................................................................................2

I.     THE STANDARD FOR DECISION OF A MOTION BROUGHT
PURSUANT TO FED. R. CIV. P. 12(B)(6)................................................................2

II.    THE STANDARD FOR DECISION OF A MOTION BROUGHT
PURSUANT TO FED R. CIV. P. 12(B)(2)................................................................4

III.   THE STANDARD FOR DECISION OF A MOTION BROUGHT
PURSUANT TO FED. R. CIV. P. 12(B)(1)................................................................5

IV.   THE ELEVENTH AMENDMENT HAS NO APPLICATION
TO THIS CASE ........................................................................................................6

      A.   THE DEFENDANTS DO NOT ENJOY ELEVENTH
AMENDMENT IMMUNITY FROM DECLARATORY RELIEF ..............7

      B.   THE DEFENDANTS DO NOT ENJOY ELEVENTH
AMENDMENT IMMUNITY FROM PURELY
INJUNCTIVE RELIEF........................................................................9

      C.   THE DEFENDANTS MISREPRESENT THE HOLDING OF
THE *COEUR D'ALENE* CASE................................................................10

V.    THE *ROOKER-FELDMAN* DOCTRINE IS NOT APPLICABLE
TO THIS CASE ........................................................................................................13

VI.   THERE IS NO LACK OF "STANDING" WHICH WOULD
FORECLOSE THIS COURT FROM ADJUDICATING THE
PLAINTIFFS' CLAIMS ............................................................................................16

VII.  THERE IS NO "LACK OF RIPENESS" WHICH WOULD FORECLOSE
THIS COURT FROM ADJUDICATING THE PLAINTIFFS' CLAIMS................18

VIII. THERE IS NO LACK OF "JUSTICIABILITY" WHICH WOULD
FORECLOSE THIS COURT FROM ADJUDICATING THE
PLAINTIFFS' CLAIMS ............................................................................................19

IX.     THERE IS NO LACK OF "SUBSTANTIALITY" WHICH WOULD
        FORECLOSE THIS COURT FROM ADJUDICATING THE
        PLAINTIFFS' CLAIMS ................................................................................20

X.      ABSTENTION, IN ANY FORM, WOULD BE INAPPROPRIATE IN
        THE CASE AT BAR ..................................................................................20

        A.      THE *BURFORD* DOCTRINE IS NOT APPLICABLE TO
                THIS CASE ......................................................................................21

        B.      *COLORADO RIVER WATER* ABSTENTION DOES NOT
                APPLY HERE ....................................................................................23

        C.      THE *YOUNGER* DOCTRINE IS NOT APPLICABLE TO
                THIS CASE ......................................................................................25

XI.     IN THE SIXTH CIRCUIT, ABSTENTION PRECLUDES THE
        DISMISSAL OF THE PLAINTIFFS' COMPLAINT .................................26

XII.    THE RULE OF NECESSITY HAS NO APPLICATION TO THE
        CASE AT BAR ..........................................................................................26

XIII.   CERTIFICATION IS PREFERABLE TO ABSTENTION .......................28

CONCLUSION AND RELIEF REQUESTED ......................................................29

<u>**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**</u>

<u>**Page(s)**</u>

*Cases*

*Abortion Coalition of Mich. v. Michigan Dept. of Public Health,*
 582 F.2d 1279 (6th Cir. 1978) ...............................................................................28

*Alabama Public Service Commn. v. Southern R.R. Co.,*
 341 U.S. 341; 71 S.Ct. 762; 95 L. Ed. 1002 (1951)............................................22

*Allied Artists Picture Corp. v. Rhodes,*
 679 F.2d 656 (6th Cir. 1982) .................................................................................8

*Benal v. Freeport-Morgan, Inc.,*
 197 F.3d 161 (5th Cir. 1999) .................................................................................3

*Briggs v. Ohio Elections Commission,*
 61 F.2d 487 (6th Cir. 1995) .........................................................................16, 17

*Brindley v. McCullen,*
 61 F.3d 507 (6th Cir. 1995) ................................................................................26

*Brister v. Faulkner,*
 214 F.3d 675 (5th Cir. 2000) ................................................................................8

*Buckley v. Fitzsimmons,*
 509 U.S. 259; 113 S.Ct. 2606; 125 L. Ed. 2d 209 (1993).................................3

*Burford v. Sun Oil Co.,*
 319 U.S. 315; 63 S.Ct. 1098; 87 L. Ed. 1424 (1943).......................21, 22, 23

*California Motor Transport v. Trucking Unlimited,*
 404 U.S. 508; 92 S. Ct. 609; 30 L. Ed. 2d 642 (1972)......................................3

*Carten v. Kent State Univ.,*
 282 F. 3d 391 (6th Cir. 2002) ...............................................................................9

*Children's Healthcare Is A Duty, Inc. v. Deters,*
 92 F.3d 1412 (6th Cir. 1996), *cert. denied,*
 519 U.S. 1149; 117 S. Ct. 1082; 137 L. Ed. 2d 217 (1997)............................8

*Cleveland Branch, NAACP v. City of Parma,*
 263 F.3d 513 (6th Cir. 2000), *cert. denied,*
 535 U.S. 971; 122 S.Ct. 1438; 152 L. Ed. 2d 382 (2002)...............................18

*College Savings Bank v. Florida Prepaid Postsecondary*
    *Education Expense Board,*
      527 U.S. 666; 119 S.Ct. 2199; 144 L. Ed. 2d 575 (1999)...............................................6

*Colorado River Water Conservation District v. United States,*
    424 U.S. 800; 96 S.Ct. 1236; 47 L.Ed.2d 483 (1976).......................................21, 23, 24, 25

*Conley v. Gibson,*
    355 U.S. 41; 78 S.Ct. 99; 2 L. Ed. 2d 80 (1957)...............................................................3

*Cooper v. Parrish,*
    203 F.3d 937 (6th Cir. 2000) ............................................................................................3

*County of Allegheny v. Frank Mashuda Co.,*
    360 U.S. 185; 79 S.Ct. 1060; 3 L. Ed. 2d 1163 (1959)......................................................22

*Cowley v. Pulsifer,*
    137 Mass. 392 (1884) ......................................................................................................19

*D.C. Court of Appeals v. Feldman,*
    460 U.S. 462; 103 S.Ct. 1303; 75 L. Ed. 2d 206 (1983)..............................6, 13, 14,
                                                   15, 26

*Déjà vu of Nashville, Inc. v. Metropolitan Govt. of Nashville and Davidson Co.,*
    274 F.3d 377 (6th Cir. 2001), *cert. denied,*
    535 U.S. 1073; 122 S.Ct. 1952; 152 L. Ed. 2d 805 (2002)..............................................18

*Dixie Fuel Co. v. Commissioner,*
    171 F.3d 1052 (6th Cir. 1999) ........................................................................................18

*Doe v. Wigginton,*
    21 F.3d 733 (6th Cir. 1994) ..............................................................................................7

*Dombrowski v. Pfister,*
    380 U.S. 479; 85 S.Ct. 1116; 14 L.Ed. 2d 22 (1965).......................................................9

*Dubuc v. Michigan Board of Law Examiners,*
    342 F.3d 610 (6th Cir. 2003) ....................................................................................10, 11

*Ex Parte Howell,*
    488 S.W.2d 123 (Tex. Crim. App. 1972).........................................................................14

*Ex Parte Young,*
    209 U.S. 123; 28 S.Ct. 441; 52 L. Ed. 714 (1908)...........................................6, 7, 8, 9,
                                                   10, 11, 13

*Geib v. Amoco Oil Co.,*
    29 F.3d 1050 (6th Cir. 1994) ..........................................................................................29

*Gilbert v. Daimler Chrysler Corp.,*
    468 Mich. 883; 661 N.W.2d 232 (2003).........................................................................19

*Gilbert v. Daimler Chrysler Corp.*
    2003 Mich. LEXIS 2039..............................................................................................28

*Green v. Mansour,*
    474 U.S. 64; 106 S.Ct. 423; 88 L.Ed. 2d 371 (1985)...................................................9

*Habich v. City of Dearborn,*
    331 F.3d 524 (6th Cir. 2003) ......................................................................................26

*Hagans v. Lavine,*
    415 U.S. 528; 94 S.Ct. 1372; 39 L.Ed. 2d 577 (1973).................................................20

*Howell v. Fifth Court of Appeals,*
    689 S.W.2d 396 (Tex. 1985).......................................................................................14

*Howell v. Homecraft Land Development, Inc.,*
    749 S.W.2d 103 (Tex. App. 1987), *cert. denied,*
    489 U.S. 1013; 109 S.Ct. 1124; 103 L. Ed. 2d 186 (1989)..........................................14

*Howell v. State Bar of Texas,*
    674 F.2d 1027 (5th Cir. 1982) .....................................................................................14

*Howell v. State Bar of Texas,*
    710 F.2d 1075 (5th Cir. 1983) .....................................................................................14

*Howell v. State Bar of Texas,*
    843 F.2d 205 (5th Cir. 1988) ......................................................................................14

*Howell v. Supreme Court of Texas,*
    885 F.2d 308 (5th Cir. 1989), *rehearing denied,*
    1989 U.S. App. LEXIS 19291 (5th Cir. 1989), *cert. denied,*
    496 U.S. 936; 110 S. Ct. 3213; 110 L. Ed. 2d 661 (1990)..............................14, 15, 16

*Hughes v. Rowe,*
    449 U.S. 5; 101 S.Ct. 173; 66 L. Ed. 2d 163 (1980).....................................................3

*Idaho v. Coeur D'Alene Tribe,*
    521 U.S. 268; 117 S.Ct. 2028; 138 L. Ed. 2d 438 (1977)........................................10, 12

*In re, J.K,*
    468 Mich. 202; 661 N.W.2d 216 (2003),
    *rehearing denied,* ___ Mich ___; 663 N.W.2d 918 (2003) .............................................28

*Jenkins v. McKeithen,*
    395 U.S. 411; 89 S.Ct. 1843; 23 L. Ed. 2d 404 (1969)....................................................3

*Joint Anti-Fascist Refugee Committee v. McGrath,*
    341 U.S. 123; 71 S.Ct. 624; 95 L. Ed. 817 (1951).....................................................3

*Kaiser Steel Corp. v. W.S. Ranch Co.,*
    391 U.S. 593; 88 S.Ct. 1753; 20 L. Ed. 2d 835 (1968)..................................................22

*Laird v. Tatum,*
    409 U.S. 824; 93 S. Ct. 7; 34 L. Ed. 2d 50 (1972)...........................................27

*Lake Carriers' Assoc. v. MacMullan,*
    406 U.S. 498; 92 S.Ct. 1749; 32 L. Ed. 2d 257 (1972).................................................20

*Lawson v. Shelby County,*
    211 F.3d 331 (6th Cir. 2000) ......................................................8

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination*
    *Unit,* 507 U.S. 163; 113 S. Ct. 1160; 122 L. Ed. 2d (1993)...........................................3

*Lee v. Western Reserve Psychiatric Habilitation Center,*
    747 F.2d 1062 (6th Cir. 1984) ......................................................8

*Louisiana Power & Light Co.,*
    360 U.S. 25; 78 S.Ct. 1070; 3 L. Ed. 2d 1058 (1959).....................................................22

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555; 112 S.Ct. 2130; 119 L. Ed. 2d 351 (1992)...............................................16

*MacDonald v. Village of Northport,*
    164 F.3d 964 (6th Cir. 1999) ..............................................21, 22

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,*
    312 U.S. 270; 61 S.Ct. 510; 85 L. Ed. 526 (1941).......................................................19

*Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.,*
    339 F.3d 428 (6Th Cir. 2003).......................................................7

*Microsoft Corp. v. United States,*
    530 U.S. 1301; 121 S. Ct. 25; 147 L. Ed. 2d 1048 (2003).................................................28

*Mitchum v. Foster,*
    407 U.S. 225; 92 S.Ct. 2151; 32 L. Ed. 2d 705 (1972).....................................................9, 13

*Moore v. Sims,*
    442 U.S. 415; 99 S.Ct. 2371; 60 L. Ed. 2d 994 (1979)...................................25

*Mosely v. Hairston,*
    920 F.2d 409 (6th Cir. 1990) .........................................................8

*Nelson v. Miller,*
    170 F.3d 641 (6th Cir. 1999) .........................................................8

*New Orleans Public Service, Inc. v. Council of the City of New Orleans,*
    491 U.S. 350; 109 S.Ct. 2506; 105 L. Ed. 2d 298 (1989)..............................21, 22

*Norton v. Ashcroft,*
    298 F.3d 547 (6th Cir. 2002) ........................................................18

*PaineWebber, Inc. v. Cohen,*
    276 F.3d 197 (6th Cir. 2001) ........................................................24

*Pulliam v. Allen,*
    466 U.S. 522; 104 S.Ct. 1970; 80 L. Ed. 2d 565 (1984)................................7

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706; 116 S.Ct. 1712; 135 L. Ed. 1 (1996)..................................23

*Rooker v. Fidelity Trust Co.,*
    263 U.S. 413; 44 S.Ct. 149; 68 L. Ed. 362 (1923).........................6, 13, 14,
                                                          15, 26

*Rossborough Mfg. Co. v. Trimble,*
    301 F.3d 482 (6th Cir. 2002) .........................................................9

*Rouse v. Daimler Chrysler Corp. UAW Non-Contributory Plan,*
    300 F.3d 711 (6th Cir. 2002) ........................................................24

*Seminole Tribe of Florida v. Florida,*
    44 U.S. 44; 116 S.Ct. 1114; 134 L. Ed. 2d 252 (1996)................................6

*Steffel v. Thompson,*
    415 U.S. 452; 94 S. Ct. 1209; 39 L. Ed. 2d 505 (1974)................................8

*Stivers v. Pierce,*
    71. F.3d 732 (9th Cir. 1995) ........................................................26

*Stoddard v. Ling-Temco-Vought, Inc.,*
    513 F. Supp. 314 (C.D. Calif. 1980).................................................11

*Tesmer v. Granholm,*
    333 F.3d 683 (6th Cir. 2003),
    *cert. pending,* 72 U.S.L.W. 3193 (Sept. 30, 2003) ...........................................................7

*Thiokol v. Michigan Dep't of Treasury,*
    987 F.2. 376 (6th Cir. 1993) ........................................................................................8

*Truax v. Raich,*
    239 U.S. 33; 36 S. Ct. 7; 60 L. Ed. 131 (1915)...........................................................9

*V. Jacobs & Sons v. Saginaw Co. Dept. of Public Health,*
    2003 U.S. Dist. LEXIS 16913 (E.D. Mich. 2003) .....................................................17

*Westside Mothers v. Haveman,*
    289 F.3d 852 (6th Cir. 2002), *cert. denied,*
    *sub nomine, Haveman v. Westside Mothers,*
    537 U.S. 1045; 123 S. Ct. 618; 154 L. Ed. 2d 516 (2002)............................6, 7, 9, 18

*Will v. United States,*
    449 U.S. 200; 101 S. Ct. 471; 66 L. Ed. 2d 392 (1980).............................................27

*Wittsock v. Mark A. Van Sile, Inc.,*
    330 F.3d 899 (6th Cir. 2003) .......................................................................................4

*Younger v. Harris,*
    401 U.S. 37; 91 S.Ct. 746; 27 L. Ed. 2d 669 (1971)..............................21, 22, 25, 26

**Statutes**

United States Constitution (and Amendments)..........................................................*passim*

28 U.S.C. § 455...............................................................................................................27

28 U.S.C. § 1331...............................................................................................................5

28 U.S.C. § 1343...............................................................................................................5

42 U.S.C. §1983......................................................................................................3, 7, 14, 28

MCL § 600.225................................................................................................11, 28, 29

MCL § 600.226......................................................................................................11, 29

***Court Rules***

Fed. R. Civ. P. 12 .................................................................................................2, 3, 4, 5

MCR 2.003 .................................................................................................................28, 29


***Treatises and Other Authorities***

Canon 3(C) of the Michigan Code of Judicial Conduct .......................................28, 29

Comment, *Abstention by Federal Courts in Suits Challenging State*
    *Administrative Decisions: The Scope of the Burford Doctrine,*
    46 U. Chi. L. Rev. 971 (1979) ...........................................................................22

Cassandra George-Sturges, "Michigan's Bad Boy Geoffrey Fieger Unseen
    and Unheard," *Triumph* (November-December, 1999) ...................................1

Nancy Perry Graham, "The Best Judges Money Can Buy,"
    *George* (Vol. V, No. 11) (December/ January, 2001) .....................................1

F. Marais, *Federal Injunctive Relief Against State Court Proceedings:*
    *The Significance of* Dombrowski, 48 Tex. L. Rev. 535 (1970).......................9

Note, *Inter-Jurisdictional Certification: Beyond Abstention Toward*
    *Cooperative Judicial Federalism,* 111 U. Penn. L. Rev. 344 (1963) ...............29

Sir Frederick Pollock, *A First Book of Jurisprudence* (5th ed. 1923) ...................27

A. Scalia, *A Matter of Interpretation: Federal Courts And The Law* (1997).......28

## COUNTER-STATEMENT OF FACTS

Curiously, although the Defendants deny the accuracy of the transcripts attributed to

them, and the sworn allegations against them, they have filed no counter-affidavits (to date).

What is beyond peradventure is that the Plaintiff Fieger (and, vicariously, the Plaintiffs Gilbert,

Graves, and Amedure) are not merely enmeshed in a running exchange of vitriolic criticism of an

intensely personal nature, they are also embroiled in the exercise.

The Defendant Young himself raised the question of the appearance of impropriety, in an

interview which he gave to *George* magazine:

> … Resnick and Young both hung on to their seats on November 7—but at
> a devastating cost.
>     They were participants in two of the ugliest, costliest, most undignified
> races in state supreme court history. And each recognized the damage to
> the image of the judiciary. "Some people will believe that justice really is
> for sale," Resnick said during the campaign. "It's a terrible situation."
> Young was equally harsh. "My advisers tell me I'll have to raise $1
> million or more to run a supreme court race," he told *George* in July.
> "How can this not be a problem? The public has a right to ask: 'If you
> have to raise $1 million, can you be really be impartial?'"[1]

Nancy Perry Graham, "The Best Judges Money Can Buy," *George* (Vol. V, No. 11) (December/

January, 2001) 74, 76-77.  In the same article, the Plaintiff Fieger is quoted, as having labeled the

Defendant Young a "goofball." *Id.*, p.77.

In an interview published by the short-lived *Triumph* magazine, which targeted African-

Americans in Southeastern Michigan, the following remarks are attributable to the Plaintiff

Fieger [Cassandra George-Sturges, "Michigan's Bad Boy Geoffrey Fieger Unseen and Unheard,"

*Triumph*, November-December, 1999, p. 28]:

> ***TRIUMPH***: They say a man is defined by his enemies. Can you say one
> good thing about Engler? Can you give him just one compliment?

---

[1] The reference to "Resnick" is the Honorable Alice Robie Resnick, Justice of the Ohio Supreme
Court.

> **Fieger:** He is very good at appointing Fascists to the court of appeals and
> the Supreme Court.  F-a-s-c-i-s-t (Fieger spells the word)  Why should I
> say something nice about him. [sic].  I have never seen him do a kind act.
> I have never seen him exercise compassion toward anyone.  I have never
> seen him make a public speech or perform an act that seems to be
> considerate toward other people.  (According to Webster's New World
> Dictionary, Fascist:  A system of government characterized by rigid one-
> party dictatorship, forcible suppression of opposition, private economic
> enterprise under centralized governmental control, belligerent nationalism,
> racism and militarism.) [sic].

Nor is this animosity a one-way street.

It bears emphasis that at least two of the commercial radio advertisements aired during

the 2000 election cycle which included vitriolic attacks on the Plaintiff Fieger (even though he

was not a candidate for any public office), ended with the tagline:  "Paid for by Robert Young

for Justice [spoken by Justice Young]; Paid for by Stephen Markman for Justice [spoken by

Justice Markman]; Paid for by Clifford Taylor for Justice [spoken by Justice Taylor]." *See, e.g.:*

*Affidavit of Geoffrey Fieger In Support of Application For Temporary Restraining Order*

(August 28, 2003), Exhibit No. J.

The free-spending hardball politics of the 2000 election cycle has led to a public cry for

greater accountability, not less, from the State Judiciary. *See, e.g.: Aguirre v. Phillips,* C.A. No.

Dr-02CA-26 (W.D. Tex.) [Plaintiffs' First Amended Bill of Complaint, Exhibit A, attached and

annexed hereto].

## ARGUMENT

I.     **THE STANDARD FOR DECISION OF A MOTION BROUGHT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Fed. R. Civ. P. 12(b)(6) provides, in relevant part, as follows:

> **(b) How Presented.**  Every defense, in law or in fact, to a claim for relief
> in any pleading, whether a claim, counterclaim, cross-claim, or third-party
> claim, shall be asserted in the responsive pleading thereto if one is

required, except the following defenses may at the option of the pleader be made by motion:

*\*\**

(6) failure to state a claim upon which relief can be granted....

In reviewing the sufficiency of the Plaintiffs' Complaint, the material allegations of the complaint are taken as admitted. *Buckley v. Fitzsimmons,* 509 U.S. 259, 261; 113 S.Ct. 2606; 125 L. Ed. 2d 209 (1993); *Hughes v. Rowe,* 449 U.S. 5, 10; 101 S.Ct. 173; 66 L. Ed. 2d 163 (1980) (*per curiam*); *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 515-516; 92 S. Ct. 609; 30 L. Ed. 2d 642 (1972); *Jenkins v. McKeithen,* 395 U.S. 411, 421; 89 S.Ct. 1843; 23 L. Ed. 2d 404 (1969); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 126; 71 S.Ct. 624; 95 L. Ed. 817 (1951).

The standard for deciding a Motion To Dismiss, under the aegis of Fed. R. Civ. P. 12(b)(6) is the familiar one of *Conley v. Gibson,* 355 U.S. 41, 45-46; 78 S.Ct. 99; 2 L. Ed. 2d 80 (1957):

> In appraising the sufficiency of a complaint we follow, of course the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief.

The United States Supreme Court has rejected the argument that 42 U.S.C. §1983 actions must surmount a "heightened pleading requirement," *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163; 113 S. Ct. 1160; 122 L. Ed. 2d (1993), and recognizes "...that the Federal Rules of Civil Procedure, do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson, supra,* 355 U.S. at 47.

As the Fifth Circuit held a few years ago: "[a] motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Benal v. Freeport-Morgan, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999); *see also, Cooper v. Parrish,* 203 F.3d 937, 944 (6th Cir. 2000).

3

In the recent case of *Wittsock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir. 2003),

Judge Cornelia Kennedy wrote:

> To avoid dismissal under Rule 12(b)(6), a complaint must contain either
> direct or inferential allegations with respect to all of the material elements
> of the claim. *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003). A §1983
> claim must present two elements: (1) that there was a deprivation of a
> right secured by the Constitution and (2) that the deprivation was caused
> by a person acting under color of state law. *Id.*

The Plaintiffs' Complaint, in the case *sub judice,* clearly fulfills those requirements.

In consequence, in the case at bar, there is no pleading defect sufficient to warrant

dismissal. The Plaintiffs have alleged that the Defendants are State Actors, acting under color of

State law, that the Plaintiffs are endowed with the Constitutional right to a fair hearing before an

impartial and independent tribunal, and that they have been deprived or suffer the immediate

threat of deprivation of that right. Those allegations satisfy the requirements of "notice

pleading." The Defendants have been put on fair notice of why they are being called to account.

In any event, the proper remedy to any defect in the sufficiency of the pleadings is leave

to amend, not an order of dismissal.


## II. THE STANDARD FOR DECISION OF A MOTION BROUGHT PURSUANT TO FED R. CIV. P. 12(B)(2)

Fed. R. Civ. P. 12(b)(2) provides, in relevant part, as follows:

> **(b) How Presented.** Every defense, in law or in fact, to a claim for relief
> in any pleading, whether a claim, counterclaim, cross-claim, or third-party
> claim, shall be asserted in the responsive pleading thereto if one is
> required, except the following defenses may at the option of the pleader be
> made by motion:
> 
>            ***
> 
> (2) lack of jurisdiction over the person....

Although the Defendants cite Fed. R. Civ. P. 12(b)(2) as grounds for their Motion To Dismiss,

they do not brief or argue the issue. The Plaintiffs deduce that the Defendants, therefore, have

abandoned this defense. If not, the Plaintiffs would seek leave of Court to offer factual proofs

that the Defendants were properly served with process, and have been properly summoned

before this Court.

## III.    THE STANDARD FOR DECISION OF A MOTION BROUGHT PURSUANT TO FED. R. CIV. P. 12(B)(1)

Fed. R. Civ. P. 12(b)(1) provides, in relevant part, as follows:

> **(b) How Presented.** Every defense, in law or in fact, to a claim for relief
> in any pleading, whether a claim, counterclaim, cross-claim, or third-party
> claim, shall be asserted in the responsive pleading thereto if one is
> required, except the following defenses may at the option of the pleader be
> made by motion:
>
> ***
>
> (1) lack of jurisdiction over the subject matter....

This Court is fully vested with subject matter jurisdiction by 28 U.S.C. § 1343(a)(4), unless it is

divested of subject matter jurisdiction by some rule of law:

> **(a)** The district courts shall have original jurisdiction of any civil action
> authorized by law to be commenced by any person:
>
> •••
>
> **(4)** To recover damages *or equitable relief* under any Act of Congress
> providing for the protection of civil Rights, including the right to vote.

[Emphasis added].

This Court is fully vested with "federal question" jurisdiction, 28 U.S.C.§ 1331:

> **§ 1331. Federal question**
>
> The district courts shall have original jurisdiction of all civil actions
> *arising out of the* Constitution, *laws*, or treaties *of the United States*.

[Emphasis added].

Subject matter jurisdiction is the Constitutional and statutory power conferred upon a United

States District Court to adjudicate disputed claims.

In the case at bar, the Defendants have raised a raft of objections to this Court's subject

matter jurisdiction: (a) Eleventh Amendment immunity; (b) lack of standing; (c) lack of ripeness; (d) lack of justiciability; (e) lack of substantiality; and (f) the *Rooker-Feldman* Doctrine. Each of these, as will be shown below, is an entirely specious argument, totally without merit.

## IV.    THE ELEVENTH AMENDMENT HAS NO APPLICATION TO THIS CASE

The Eleventh Amendment to the Constitution of the United States reads as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States of another state, or by citizens or subjects of any foreign state.

Eleventh Amendment immunity, although ground in the demonstrable text of the Constitution, has been determined by the Supreme Court to be a basic tenet of our Federal system of government. *Seminole Tribe of Florida v. Florida,* 44 U.S. 44, 72-73; 116 S.Ct. 1114; 134 L. Ed. 2d 252 (1996). There are three principal exceptions. Congress may abrogate a State's Eleventh Amendment immunity pursuant to §5 of the Fourteenth Amendment, or a State may waive its immunity. *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 670; 119 S.Ct. 2199; 144 L. Ed. 2d 575 (1999). Neither of those exceptions applies to this case.

The third exception is based upon the doctrine of *Ex Parte Young,* 209 U.S. 123; 28 S.Ct. 441; 52 L. Ed. 714 (1908). As explained by the Sixth Circuit in *Westside Mothers v. Haveman,* 289 F.3d 852, 861 (6th Cir. 2002), *cert. denied, sub nomine, Haveman v. Westside Mothers,* 537 U.S. 1045; 123 S. Ct. 618; 154 L. Ed. 2d 516 (2002):

> Under the doctrine developed in *Ex parte Young* and its progeny, a suit that claims that a state official's actions violate the constitution or federal law is not deemed a suit against the state, and so barred by sovereign immunity, so long as the state official is the named defendant and the

6

relief sought is only equitable and prospective. *See* 209 U.S. 123, 28 S.Ct.
441, 52 L. Ed. 714 (1908); *see also, e.g., Will Michigan Dep't of State
Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L. Ed. 2d 45 (1989). "Since
*Ex parte Young*…it has been settled that the Eleventh Amendment for a
state official confronted by a claim that he [or she] had deprived another
of a federal right under the color of state law." *Hafer v. Melo,* 502 U.S. 21,
30, 112 S.Ct. 358, 116 L. Ed. 2d 301 (1990) (citation omitted).

Of course, *Ex parte Young* is a "fiction" to the extent that it sharply
distinguishes between a state and an officer of the state, but it is a
necessary fiction, required to maintain the balance of power between state
and federal governments. "The availability of prospective relief of the sort
awarded in *Ex parte Young* gives life to the Supremacy Clause." *Coeur
D'Alene,* 521 U.S. at 293 (quoting *Green v. Mansour,* 474 U.S. at 68).
When a court addresses a claim under *Ex parte Young* it should simply ask
"whether a complainant alleges an ongoing violation of federal law, and
seeks relief properly characterized as prospective." 521 U.S. at 296
(O'Connor, J., concurring).

A State court judge is a state official within the meaning of *Ex Parte Young, supra. Pulliam v.

Allen,* 466 U.S. 522; 104 S.Ct. 1970; 80 L. Ed. 2d 565 (1984).[2]  *See also, Tesmer v. Granholm,*

333 F.3d 683 (6th Cir. 2003), *cert. pending,* 72 U.S.L.W. 3193 (Sept. 30, 2003).

   As discussed in more detail below, the Defendants have *no* Eleventh Amendment

immunity to shield them from the equitable jurisdiction of this Court.

### A.    THE DEFENDANTS DO NOT ENJOY ELEVENTH AMENDMENT IMMUNITY FROM DECLARATORY RELIEF

   It is well established, and the settled law that "… official-capacity claims for declaratory

relief are not barred by the Eleventh Amendment, even if the officer's future compliance with

federal law would have some 'ancillary' effect upon the State treasury." *Doe v. Wigginton,* 21

F.3d 733, 737 (6th Cir. 1994); *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.,*

---

[2] Plaintiffs recognize that Congress amended 42 U.S.C. §1983 in 1996 to narrow the reach of
*Pulliam v. Allen, supra.*  In consequence, this Court must first enter declaratory relief before it
may properly grant declaratory relief.

339 F.3d 428, 432-433 (6Th Cir. 2003) (*semble*); *Lawson v. Shelby County,* 211 F.3d 331, 334

(6th Cir. 2000) ("However, the Lawsons' claim for prospective injunctive and declaratory relief

against the individual state and county officials should not be dismissed."); *Nelson v. Miller,* 170

F.3d 641, 646 (6th Cir. 1999) (discussion of *Ex Parte Young* exception); *Thiokol v. Michigan*

*Dep't of Treasury,* 987 F.2. 376, 381 (6th Cir. 1993) ("...the amendment does not preclude

actions against state officials sued in their official capacity for prospective injunctive or

declaratory relief."); *Mosely v. Hairston,* 920 F.2d 409, 416 (6th Cir. 1990) ("...a suit against a

state official challenging that official's actions on Constitutional grounds is not a suit against the

State."); *Lee v. Western Reserve Psychiatric Habilitation Center,* 747 F. 2d 1062, 1066 (6th Cir.

1984) ("Accordingly, declaratory relief would fall within the *Young* exception as well."); *see*

*also, Allied Artists Picture Corp. v. Rhodes,* 679 F.2d 656, 665 (6th Cir. 1982).

  As the U.S. Court of Appeals for the Sixth Circuit emphasized in *Children's Healthcare*

*Is A Duty, Inc. v. Deters,* 92 F.3d 1412, 1415 (6th Cir. 1996), *cert. denied,* 519 U.S. 1149; 117 S.

Ct. 1082; 137 L. Ed. 2d 217 (1997):

> *Young* abrogates a state official's Eleventh Amendment immunity when a
> suit challenges the constitutionality of a state official's action.

In short, the Eleventh Amendment does not shield the Defendants from the appropriate

declaratory relief which may be fashioned by this Court.

  And, importantly, declaratory relief is available even when injunctive relief is not. *Steffel*

*v. Thompson,* 415 U.S. 452; 94 S. Ct. 1209; 39 L. Ed. 2d 505 (1974) ("...engrafting upon the

Declaratory Judgment Act a requirement that all the traditional equitable prerequisites to the

issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered

would defy Congress' intent to make declaratory relief available in cases where an injunction

would be inappropriate."). *See also, Brister v. Faulkner,* 214 F.3d 675, 679 (5th Cir. 2000) (*held,*

the failure to prove sufficient facts for injunctive relief does not preclude declaratory relief).

## B. THE DEFENDANTS DO NOT ENJOY ELEVENTH AMENDMENT IMMUNITY FROM PURELY INJUNCTIVE RELIEF

In a similar vein, and for the very same reasons, it is well-established that the Eleventh Amendment does not preclude the imposition of prospective, preventative relief. Beginning with *Ex Parte Young,* 204 U.S. at 155-156, in which the Supreme Court held that: "...individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, who threaten and are about to commence proceedings, either of a criminal or civil nature, may be enjoined by a Federal court of equity from such action[,]" there has been a long and unbroken chain of precedent supporting this proposition of law. *Truax v. Raich,* 239 U.S. 33, 37-38; 36 S. Ct. 7; 60 L. Ed. 131 (1915); *Dombrowski v. Pfister,* 380 U.S. 479; 85 S.Ct. 1116; 14 L.Ed. 2d 22 (1965)[3]; *Mitchum v. Foster,* 407 U.S. 225; 92 S.Ct. 2151; 32 L. Ed. 2d 705 (1972) ("...this Court long ago recognized that federal injunctive relief can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights."); *Green v. Mansour,* 474 U.S. 64, 68; 106 S.Ct. 423; 88 L.Ed. 2d 371 (1985) ("*Young* also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law."); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002); *Westside Mothers v. Haveman, supra,* 289 F.3d at 861; *Carten v. Kent State Univ.,* 282 F. 3d 391, 395-396 (6th Cir. 2002).

---

[3] *See generally,* F. Marais, *Federal Injunctive Relief Against State Court Proceedings: The Significance of* Dombrowski, 48 Tex. L. Rev. 535 (1970).

## C.   THE DEFENDANTS MISREPRESENT THE HOLDING OF THE *COEUR D'ALENE* CASE

Faced with an impenetrable wall of Eleventh Amendment jurisprudence, the Defendants have resorted to misrepresenting the holding of the United States Supreme Court in *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 268; 117 S.Ct. 2028; 138 L. Ed. 2d 438 (1977). Careful scrutiny of the *Coeur D'Alene* case discloses that the Supreme Court did *not hold that*: "[t]he law now requires a case by case analysis to determine if the federal court should properly exercise jurisdiction." *Defendants' Brief In Support of Motion To Dismiss* (September 26, 2003), p. 4.

The "case by case approach" language is contained in Section II-D of the lead opinion. That Section earned the concurrence of *only* Chief Justice William Rehnquist. That part of Justice Kennedy's opinion which states that: "[w]e do not question the continuing validity of the *Ex parte Young* doctrine [,]" 521 U.S. at 269, is the *majority* opinion.

On the other hand, Justice Kennedy's case-by-case "approach unnecessarily recharacterizes and narrows much of *Young* jurisprudence. The parties have not briefed whether such a shift in the *Young* doctrine is warranted. In my view, it is not." *Idaho v. Coeur D'Alene Tribe, supra,* 521 U.S. at 291. (O'Connor, J; Scalia, Thomas, JJ, *concurring*). Moreover, a majority of the Court expressly *disclaimed* this part of Justice Kennedy's analysis. *Idaho v. Coeur D'Alene Tribe, supra,* 521 U.S. at 298. ("Justice O'Connor's view is the controlling one....") (Souter, J; Stephens, Ginsberg, and Breyer, JJ, *dissenting*).

And, importantly, the Attorney General's adoption of this "case by case approach" argument has been expressly rejected by the Sixth Circuit in *Dubuc v. Michigan Board of Law Examiners,* 342 F.3d 610, 617 (6th Cir. 2003) ("Googasian and Berry mistakenly cite portions of Justice Kennedy's opinion that were not joined by a majority of the Court."), a case neither cited

nor distinguished by the Defendants.[4]

As the Court in *Dubuc*, 342 F.3d at 616 [citation omitted], emphasized, "determining whether the *Ex parte Young* doctrine applies *does not* involve an analysis of the merits of a plaintiff's claims[,]" a point of law which the Defendants would invite this Court to ignore.

The fatal flaw in the Defendants' arguments regarding this issue is that *every* case which comes within the embrace of the *Young* doctrine "implicates special sovereignty interests," *Defendants' Brief In Support of Motion To Dismiss, supra,* p. 5; and, that the *Young* doctrine creates a legal fiction through which ordinary citizens may vindicate their Federal Constitutional rights against individual State Governments by suing individual State officers in their official capacities.

An additional flaw in the Defendants' arguments regarding this issue is that the Defendant Ferry is not a minor functionary of the Michigan Supreme Court. He is clothed with statutory authority coequal with the Michigan Supreme Court to reassign members of the judiciary, as the necessity arises. MCL § 600.225(2).[5] While the Plaintiffs concede, as they

---

[4] In *Stoddard v. Ling-Temco-Vought, Inc.,* 513 F. Supp. 314, 325, n. 3 (C.D. Calif. 1980), the District Court Judge made this observation: "While not violative of the letter of the letter of the Code of Professional Responsibility, the corporate defendants' citation to only the aberrant case which supported their argument and their concurrent failure to disclose and discuss state and federal court decisions contrary to their position, certainly violated the spirit of the Code and ill-served their duty as officers of the court." The Court considered the memorandum of law filed in support of the motion to dismiss "an implied representation that these attorneys knew of no adverse authority." *Id.* In consequence, the circumstances admitted of only two possibilities: (a) a lack of candor toward the court; or (b) a lack of diligence in the research. In the case at bar, the Defendants' failure to discuss or distinguish the *Dubuc* case is made all the more troubling by the fact that the Plaintiffs cited that case at the hearing on the Plaintiffs' Application For Temporary Order, in opposition to the very argument in which the Defendants persist. [*Transcript of Proceedings: Plaintiffs' Application For Temporary Restraining Order* (September 4, 2003), pp. 20-21].

[5] MCL § 600.225(2) provides [emphasis added]: "The authority granted by this section may be exercised by the supreme court at its discretion through its direct order, *or through the court administrator.*" *See also,* MCL § 600.226(1), which reads: "The supreme court may authorize

must, that this Court lacks the jurisdiction to issue a writ of mandamus to direct a State officer to

perform a State statutory duty, this Court can, and must, decide the Federal questions which

devolve upon his failure to do so.  Moreover, he is a necessary party for the relief requested.

Furthermore, the Defendants' attempt to re-manufacture the Plaintiffs' allegations is in

vain.  This is a civil action which has not been brought against the State of Michigan, nor against

any branch of Government of the State of Michigan, nor against the Michigan Supreme Court, as

an institution, nor against every member of the Court as a "committee of the whole."  The

Plaintiffs' Complaint has been rather carefully crafted to seek a declaratory judgment that the

Chief Justice, and three Associate Justices, are Constitutionally infirm from making any *further*

decision regarding the Plaintiffs' cases, *in the future*.  The Plaintiffs have asserted no claim in

this proceeding that Justices Weaver, Kelly or Cavanaugh suffer from any similar Constitutional

disability, as compared to the named Defendants.  In consequence, the Defendants' assertion,

that the "Plaintiffs seek to enjoin the entire Michigan Supreme Court from acting in the *Gilbert*

and *Amedure* cases...." *Defendants' Brief In Support of Motion To Dismiss, supra,* p. 5, is

plainly specious and disingenuous at best.[6]

Finally, the Defendants ignore the most important point of all in *Coeur D'Alene, supra*:

---

any retired judge from *any court* to perform judicial duties *in any court in the state*." [Emphasis
added].
[6] At this juncture, the remainder of the Defendants' arguments cannot survive the test of *reductio
ad absurdum*.  A Federal Constitutional deprivation of right, even if enshrined in a State
Constitution, does not thereby evade the reach of a Federal Court of equity.  For example, if the
Michigan State Constitution forbade miscegenation, and required the Legislature to enact penal
provisions imprisoning those who engage in inter-racial marriage, would this Court lack
jurisdiction to protect the Federal Constitutional rights of those inter-racial partners who wish to
marry?  If the Michigan State Constitution mandated segregated public schools, would the hand
of this Court be stayed, if declaratory and injunctive relief were sought by students affected
thereby?  These questions are moot, because the Michigan State Constitution, like the
Constitution of the United States, requires a fair and impartial judiciary.  There is, therefore, no
infringement of the Michigan State Constitution.

the *Young* doctrine not only guarantees a Federal forum in cases in which there is no State forum or no adequate State forum, but the *Young* doctrine also serves to guarantee a Federal forum in all cases in which the vindication of Federal law outweighs any alleged State sovereign interest.

## V.  THE *ROOKER-FELDMAN* DOCTRINE IS NOT APPLICABLE TO THIS CASE

If the *Rooker-Feldman* doctrine has any application to this case at all, it is only because the named Defendants ignored the admonition of this Court not to take any further action in the Plaintiffs' underlying cases now pending before the Supreme Court of Michigan.[7] In consequence, the named Defendants are the authors of the present mischief. Unwilling or unable to extend the same comity to this Court which this Court extended to the named Defendants, the named Defendants have, figuratively, stuck their collective thumb in the eye of this Court; and, no less, denigrated the Plaintiffs' Federally-guaranteed Constitutional rights. This is proof positive that the Plaintiffs are faced with the "great, immediate, and irreparable loss," *Mitchum v. Foster, supra,* at *Id.,* of their Federal Constitutional right to a fair hearing before a fair and impartial tribunal. The Defendants' refusal to heed this Court's admonition is a clarion call for this Court to intervene. It conveys very clearly, even if subtly, that the Defendants either do not recognize the Federal rights of the Plaintiffs, or that they are incapable of protecting them.

And, importantly, the Defendants concede that: "[t]he clear purpose of the complaint here is to avoid *further decision* by the Michigan Supreme Court...." *Defendants' Brief In Support of Motion To Dismiss, supra,* p. 7 [emphasis added]. Very clearly, the Defendants have admitted that the *Rooker-Feldman* doctrine does not apply, since the Defendants have now agreed, on the record, that the Plaintiffs' Complaint seeks prospective relief only. And, it is

---

[7]*Transcript: Plaintiffs' Application For Temporary Restraining Order, supra,* p. 32.

well-settled and well-established that the *Rooker-Feldman* doctrine does not apply to cases which seek prospective relief only. Secondly, *Rooker-Feldman* does not apply because there is no "final order" of a State court that this Court is being called upon to review.

The only case relied upon by the Defendants in support of this argument, *Howell v. Supreme Court of Texas,* 885 F.2d 308 (5th Cir. 1989), *rehearing denied,* 1989 U.S. App. LEXIS 19291 (5th Cir. 1989) (*per curiam*), *cert. denied,* 496 U.S. 936; 110 S. Ct. 3213; 110 L. Ed. 2d 661 (1990), is not binding upon this Court, is non-persuasive, and totally inapposite. Howell[8] was the losing plaintiff in *Howell v. Homecraft Land Development, Inc.,* 749 S.W.2d 103 (Tex. App. 1987) (*per curiam*). His writ of error to the Supreme Court of Texas was denied in an unreported order, and the United States Supreme Court denied his petition for writ of *certiorari. Howell v. Homecraft Land Development, Inc.,* 489 U.S. 1013; 109 S.Ct. 1124; 103 L. Ed. 2d 186 (1989). *After* the Supreme Court of Texas denied his challenge of disqualification, brought pursuant to established rules of Texas procedure, but *before* the United States Supreme Court denied his petition for *certiorari,* Howell filed his 42 U.S.C. § 1983 action against the Supreme Court of Texas.

Judge Reavley staged the factual backdrop for the opinion in *Howell v. Supreme Court of Texas, supra,* 885 F.2d 308, 309-310, as follows:

> This action arises out of Texas state court proceedings in which Howell, as plaintiff, suffered an adverse jury verdict and judgment. A jury finding that Howell brought his Texas Deceptive Trade Practices Act claim in bad faith resulted in the awarding of attorneys' fees to the defendants. Howell appealed the judgment to the Fifth District Court of Appeals of Texas.

---

[8] Howell, both as a lawyer and as a judge of the Texas Court of Appeals, has an extraordinary history of litigiousness which provides the context within which this case was decided. *See, e.g.: Howell v. State Bar of Texas,* 843 F.2d 205 (5th Cir. 1988); *Howell v. State Bar of Texas,* 710 F.2d 1075 (5th Cir. 1983); *Howell v. State Bar of Texas,* 674 F.2d 1027 (5th Cir. 1982); *Howell v. Fifth Court of Appeals,* 689 S.W.2d 396 (Tex. 1985); *Ex Parte Howell,* 488 S.W,2d 123 (Tex. Crim. App. 1972), are only a smattering of the reported cases involving Howell.

> *Because Howell was a judge on that court, the normally seated judges recused themselves. A specially appointed panel was convened* and affirmed the judgment and imposition of attorneys' fees against Howell.

> [Emphasis added].

Judge Reavley went on to state the core holding of the case, *Id.*, 885 F.2d at 311:

> *All parties to this proceeding agree that Howell presented the claims he raises in this proceeding to the Texas Supreme Court and that the court decided those claims against him.* The precedents cited above indicate that Howell's only means of challenging the state court's rulings was by writ of certiorari in the United States Supreme Court. Howell did in fact apply for a writ of certiorari alleging a violation of the due process clause, and that writ was denied. Howell may not now reopen his challenge *in a new proceeding* in federal court.

> [Emphases added].

First of all, Howell made only generalized allegations of prejudice and bias allegedly harbored by all of the members of the Texas Supreme Court. In the case at bar, the Plaintiffs have made very fact-specific allegations against only four members of the Court.

Second, Howell "sat on his rights" until his Due Process challenge was denied by the Supreme Court of Texas,[9] thereby plainly triggering the *Rooker-Feldman* doctrine. In contrast, these Plaintiffs have been vigilant in seeking the shelter of this Court: they did not wait until *after* the Michigan Supreme Court decided the disqualification issue, but acted *beforehand*.

Third, Howell contended that he was engaged in a facial challenge to the court rule governing the recusal of appellate court judges was tied to a provision in the Texas State Constitution, which was less stringent than the Due Process Clause of the Fourteenth

---

[9] Howell actually brought, and the Supreme Court of Texas decided, two different motions regarding the disqualification issue. With the first, he "request[ed] that each of the justices recuse themselves, or in the alternative, be disqualified." *Howell v. Supreme Court of Texas, supra,*, 885 F.2d at 310. "A subsequent motion seeking the recusal or disqualification only of the chief justice was also denied. The court then denied Howell's application for writ of error and his motion for rehearing." *Id.* Thus, Howell sought relief from the Supreme Court of Texas on *four,* different occasions, before resorting to a United States District Court.

Amendment. Here, as argued *infra* at Section XII, the Defendants' "rule of necessity" argument only makes sense if there is *no* procedural vehicle to disqualify a Justice of the Supreme Court under Michigan law, in which case resort to this Court is the *only* avenue open to the Plaintiffs in this case.

Finally, this is not a "new proceeding in federal court" attempting to "reopen" anything. This is a preemptive challenge, and not a belated one.

In consequence, *Howell v. Supreme Court of Texas, supra,* is not only nonbinding precedent from another U.S. Circuit Court of Appeals, it is distinguishable on its facts, on its procedural posture, and on the legal questions which were heard and decided. It is inapposite and should not be followed by this Court.

The Plaintiffs strenuously disagree that, in order to "[t]o evaluate Plaintiffs' claims of bias, this court must also evaluate the underlying rulings in these case [*Gilbert* and *Amedure*] to determine whether they resulted from bias and prejudice or otherwise comport with existing law or a reasonable extension thereof." *Defendants' Brief In Support of Motion To Dismiss, supra,* p. 7. On the contrary, in order to enter any declaratory or injunctive relief, this Court need only find, on the facts, that the Constitutional risk of the *appearance* of impropriety is intolerable.

## VI.     THERE IS NO LACK OF "STANDING" WHICH WOULD FORECLOSE THIS COURT FROM ADJUDICATING THE PLAINTIFFS' CLAIMS

Even though the Defendants have not briefed nor argued this issue, the very fact that they have mentioned the issue renders it incumbent upon this Court to decide the issue. "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560; 112 S.Ct. 2130; 119 L. Ed. 2d 351 (1992).

In *Briggs v. Ohio Elections Commission,* 61 F.2d 487, 491 (6th Cir. 1995), the Court held:

Standing requires three elements: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) there must be a causal connection between the injury and the conduct complained of, and (c) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

[Internal quotation marks, ellipses, and citation omitted].

Judge Lawson, in *V. Jacobs & Sons v. Saginaw Co. Dept. of Public Health,* 2003 U.S. Dist. LEXIS 16913 (E.D. Mich. 2003), only a few days ago, collected and published the relevant authorities in the Sixth Circuit, regarding the issue of standing:

As noted above, defendant Marion Township contends that this Court lacks subject matter jurisdiction because the plaintiff lacks standing to sue, and the case is not ripe for adjudication. *See,* U.S. Const., Art. III, §2 (limiting the "judicial power of the United States" to actual "cases" and "controversies"). Standing is "the threshold question in every federal case." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197; 45 L. Ed. 2d 343 (1975). "The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of bystanders.'" *Coal Operators and Associates, Inc. v. Babbitt,* 291 F. 3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 70 L. Ed. 2d 700 (1982). "To satisfy article III's requirement, a plaintiff must have suffered actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coal Operators,* 291 F.3d at 916. Thus, the constitutional requirements for standing include proof of injury in fact, causation, and redressability. *Ibid.*

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing requirements. *See id.* First, a plaintiff must assert "his [or her] own legal rights and interests, and cannot rest his [or her] claim for relief on the legal rights or interests of third parties." Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. *Coal Operators,* 291 F.3d at 916 (citing *Valley Forge,* 454 U.S. at 474-75). Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Ibid.* "These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a

17

proper proponent, and the action to vindicate the rights asserted.'" *Coal Operators,* 291 F.3d at 916 (quoting *Pestrak v. Ohio Elections Comm'n,* 926 F.2nd 573, 576 (6th Cir. 1991).

"A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coal Operators,* 291 F.3d at 916.

*See also, Westside Mothers v. Haveman, supra,* 289 F.3d at 863.

## VII.    THERE IS NO "LACK OF RIPENESS" WHICH WOULD FORECLOSE THIS COURT FROM ADJUDICATING THE PLAINTIFFS' CLAIMS

As the Sixth Circuit Court of Appeals held in *Norton v. Ashcroft,* 298 F.3d 547, 554 (6th Cir. 2002):

> A court lacks jurisdiction over the subject matter if the claim is not yet ripe for judicial review…. Ripeness doctrine exists to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities.  In order to determine whether a claim is ripe, this court examines (1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and (3) hardship to the parties if review is denied.
>
>                    [Citations omitted; internal quotation marks deleted].

In short, the question is: "[w]hether the issues are fit for a judicial decision as well as the hardship to the challenging party resulting from potential delay in obtaining judicial decision." *Dixie Fuel Co. v. Commissioner,* 171 F.3d 1052, 1059 (6th Cir. 1999), quoted with approval in *Déjà vu of Nashville, Inc. v. Metropolitan Govt. of Nashville and Davidson Co.,* 274 F.3d 377, 399 (6th Cir. 2001), *cert. denied,* 535 U.S. 1073; 122 S.Ct. 1952; 152 L. Ed. 2d 805 (2002); *see also, Cleveland Branch, NAACP v. City of Parma,* 263 F.3d 513, 533 (6th Cir. 2000), *cert. denied,* 535 U.S. 971; 122 S.Ct. 1438; 152 L. Ed. 2d 382 (2002).

In the case at bar, this three-part test is easily met.  As noted elsewhere, each decision by an adjudicator who is biased or prejudiced, or whose decisionmaking ability is tainted by the appearance of impropriety, is a separate violation of the U.S. Constitutional right to a fair hearing

before an impartial and independent tribunal. Thus, participation by the named Defendants to allow the U.S. Chamber of Commerce and the Michigan Chamber of Commerce as *amicus curiae* in *Gilbert v. Daimler Chrysler Corp.,* 468 Mich. 883; 661 N.W.2d 232 (2003), after accepting some $3 million dollars in campaign contributions from the Chamber, was a deprivation of the Plaintiffs' Constitutional rights. Participation in the decision to grant leave to appeal in *Gilbert v. DaimlerChrysler Corp, Id.,* was a separate violation of the Plaintiffs' Constitutional rights. Every further decision is a further harm. The threat is not only imminent, it is present and continuing.

As Oliver Wendell Holmes once wrote: "...it is of the highest moment that those who would administer justice should always act under the sense of public responsibility, *and that every citizen* should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer,* 137 Mass. 392, 394 (1884) [emphasis added].

Second, to the extent that the factual record has any inadequacy, that inadequacy will be cured by discovery and by the evidentiary hearing in November.

Finally, the hardship to the Plaintiffs if this Court declines to decide the main question presented is immense. They will have been denied a Federal forum to safeguard their Federal rights, with no practical avenue of redress.

## VIII. THERE IS NO LACK OF "JUSTICIABILITY" WHICH WOULD FORECLOSE THIS COURT FROM ADJUDICATING THE PLAINTIFFS' CLAIMS

In determining whether or not a case is "justiciable," "[b]asically, the question in each case is whether...there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273; 61 S.Ct. 510; 85 L. Ed. 526 (1941);

*Lake Carriers' Assoc. v. MacMullan,* 406 U.S. 498; 92 S.Ct. 1749; 32 L. Ed. 2d 257 (1972).

As pointed out above, the Plaintiffs do not lack standing, and the issues do not lack ripeness. There is no issue of mootness. In short, there is no legal impediment to this Court rendering a decision in this case on the basis of nonjusticiability.

## IX. THERE IS NO LACK OF "SUBSTANTIALITY" WHICH WOULD FORECLOSE THIS COURT FROM ADJUDICATING THE PLAINTIFFS' CLAIMS

Citing and relying on *Hagans v. Lavine,* 415 U.S. 528; 94 S.Ct. 1372; 39 L.Ed. 2d 577 (1973), the Defendants argue that this Court lacks jurisdiction because this case is "fictitious" and "frivolous." The thrust of this argument is lawyers may not engage in personal abuse of members of the judiciary in order to provoke recusal. This argument ignores the record facts. The abuse, if there be any, is an exchange. It is certainly not a single-handed effort by one lawyer to manufacture grounds for recusal. Moreover, this argument contradicts the Defendants' subsequent argument that there is no procedural vehicle for either disqualifying a Justice or replacing a recused Justice.

Furthermore, "[o]nce a federal court has ascertained that a plaintiff's jurisdiction conferring claims are not 'insubstantial on their face,' *Engineers v. Chicago, R.I. & P. R. Co.,* 382 U.S. 423, 428 (1966), 'no further consideration of the merits of the claim[s] is relevant to a determination of the court's jurisdiction of the subject matter.' *Baker v. Carr,* 369 U.S. 186, 199 (1962)." *Hagans v. Lavine, supra,* 415 U.S. at 542, n. 10.

From the perspective of the Plaintiffs, this dilemma is hardly fictitious or frivolous.

## X.     ABSTENTION, IN ANY FORM, WOULD BE INAPPROPRIATE IN THE CASE AT BAR

The Defendants seek to invoke three different varieties of the abstention doctrine:  (a) *Burford* abstention [*Burford v. Sun Oil Co.,* 319 U.S. 315, 317-318; 63 S.Ct. 1098; 87 L. Ed. 1424 (1943)]; (b) *Colorado River* abstention [*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814; 96 S.Ct. 1236; 47 L.Ed.2d 483 (1976)]; and (c) *Younger* abstention [*Younger v. Harris,* 401 U.S. 37; 91 S.Ct. 746; 27 L. Ed. 2d 669 (1971)].  Despite the Defendants' earnest entreaties that this Court should stay its hand in the name of "Our Federalism," careful analysis of each of these rules compels the conclusion that none of them applies to the facts of this case.

As the Sixth Circuit emphasized in *MacDonald v. Village of Northport,* 164 F.3d 964, 968 (6th Cir. 1999) [internal quotation marks deleted; citation omitted], any analysis of abstention must first "begin with the fundamental proposition that abstention is a limited exception to the virtually unflagging obligation of federal courts to exercise the jurisdiction given to them." All three of these varieties of abstention hinge on the availability of "timely and adequate state-court review...." *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361; 109 S.Ct. 2506; 105 L. Ed. 2d 298 (1989) [hereinafter referred to as *NOPSI*], a factor which is conspicuous by it absence in this case.  Timely review by a majority of a State court of last resort, who are prejudiced and biased *or* tainted by the appearance of impropriety, is not adequate review.

### A.     THE *BURFORD* DOCTRINE IS NOT APPLICABLE TO THIS CASE

As the Court explained *MacDonald v. Village of Northport, supra,* 164 F.3d at 967 [emphasis added]:  "[u]nder the *Burford* doctrine, federal courts abstain from deciding cases

when there is a need to defer to complex state *administrative* procedures." Just as *Younger*

abstention counsels deference to a pending State court proceeding, *Burford* requires the same

deference to a pending proceeding before a State administrative agency. Thus, where "adequate

state court review of an administrative order based upon predominantly local factors is available

to appellee, intervention of a federal court is not necessary for the protection of federal rights."

*Alabama Public Service Commn. v. Southern R.R. Co.,* 341 U.S. 341, 349; 71 S.Ct. 762; 95 L.

Ed. 1002 (1951). *See also,* Comment, *Abstention by Federal Courts in Suits Challenging State*

*Administrative Decisions: The Scope of the Burford Doctrine,* 46 U. Chi. L. Rev. 971 (1979).

Although the *Burford* doctrine is not strictly limited to Federal Court interference in

administrative agency proceedings, it is limited to issues such as land use planning, *MacDonald*

*v. Village of Northport, supra;* eminent domain, *Louisiana Power & Light Co.,* 360 U.S. 25; 78

S.Ct. 1070; 3 L. Ed. 2d 1058 (1959), *but see, County of Allegheny v. Frank Mashuda Co.,* 360

U.S. 185; 79 S.Ct. 1060; 3 L. Ed. 2d 1163 (1959), decided the same day; water law, *Kaiser Steel*

*Corp. v. W.S. Ranch Co.,* 391 U.S. 593; 88 S.Ct. 1753; 20 L. Ed. 2d 835 (1968), and the like.

The gravamen of the *Burford* doctrine is to stay the hand of a Federal Court for avoidance

of needless conflict with the administration by a State of its own affairs. In contrast, the case at

bar seeks the vindication of Federally-protected Constitutional rights.

As Justice Scalia pointed out in the *NOPSI* case, 491 U.S. at 361, *Burford*-type abstention

is appropriate in two instances:

> Where timely and adequate state-court review is available, a federal court
> sitting in equity must decline to interfere with the proceedings or orders of
> state administrative agencies: (1) when there are "difficult questions of
> state law bearing on policy problems bearing on policy problems of
> substantial public import whose importance transcends the importance of
> the case then at bar"; or (2) where the "exercise of federal review of the
> question in a case and in similar cases would be disruptive of state efforts

to establish a coherent policy with respect to a matter of substantial public concern.

[Quoting from *Colorado River*, *supra*, 424 U.S. at 814.]

Measured by this test, this case does not come within the purview of Burford-type abstention. Adequate State Court review is not available. Any order of this Court would not interfere with the proceedings or orders of any State administrative agency. There are no difficult questions of State law. Notwithstanding the Defendants' efforts to recast the question presented from one of Constitutional right to a case of first impression involving the interpretation of a Michigan statute, the only issue before this Court is the issue of the Plaintiffs' Fourteenth Amendment Due Process rights. If this Court determines that there is an unresolved issue of State law, then certification and injunction, as argued below, is the answer, not abstention. Finally, there is no indication of an organized effort underway to establish a coherent State policy on a matter of substantial public concerns.

For all of these reasons, the *Burford* doctrine does not apply to this case.

### B.   *COLORADO RIVER WATER* ABSTENTION DOES NOT APPLY HERE

In the case of *Colorado River Water Conservation District v. United States, supra*, the U.S. Supreme Court adopted yet another version of abstention. Justice Brennan's opinion is an eloquent discourse on the desirability of a Federal Court exercising Federal jurisdiction, when called upon to do so. "Indeed," he emphasizes, "the presence of a federal basis for jurisdiction raises the level of justification needed for abstention." *Id.*, 424 U.S. at 815, n. 21. Yet, although the facts fit into no other form of abstention, one was created for the occasion. Thus, abstention is proper in "cases which are *duplicative* of a pending state proceeding." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716; 116 S.Ct. 1712; 135 L. Ed. 1 (1996).

In *Rouse v. Daimler Chrysler Corp. UAW Non-Contributory Plan,* 300 F.3d 711, 715 (6th Cir. 2002), the Court held that "[s]ince abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it, only the clearest of justifications will warrant it." [Internal quotation marks deleted, quoting from the *Colorado River Water* case with approval].

In order to determine whether *Colorado River Water* abstention is appropriate, this Court must apply an eight factor balancing test. These eight factors are:

    1.   Whether the State court has assumed jurisdiction over any *res* or property;

    2.   Whether the Federal forum is less convenient to the parties;

    3.   The avoidance of piecemeal litigation;

    4.   The order in which jurisdiction was obtained;

    5.   Whether the source of the governing law is State or Federal;

    6.   The adequacy of the State court to protect the Federal Plaintiffs' rights;

    7.   The relative progress of the State and Federal proceedings;

    8.   The presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen,* 276 F.3[rd] 197 (6th Cir. 2001).

Applying this test to the facts in the case at bar, the State court has not assumed jurisdiction over any *res* or property. This militates against abstention and in favor of the exercise of jurisdiction. *Id.* The convenience question is a geographic one, *Id.,* and there is no serious inconvenience to any of the parties to attend Court in either Detroit or Ann Arbor. Again, the balance disfavors abstention and favors the exercise of jurisdiction. The avoidance of piecemeal litigation is of marginal importance in this matter. The Plaintiffs concede, as they

must, that the Michigan Supreme Court obtained jurisdiction first. Next, the source of the governing law is not only Federal law, it is Federal Constitutional law.

The most important factor is the complete inadequacy of the State court to protect the Federal Plaintiffs' Due Process rights. The named Defendants are either unable (presumably because, as they argue, there is no procedural vehicle by which a Justice of the Michigan Supreme Court can be disqualified, and no statutory grant of authority for substituting a recused Justice) or unwilling (because of actual bias and prejudice) to safeguard the Plaintiffs' Due Process Clause rights. The relative progress of the State and Federal proceedings may slightly favor abstention, but it is of little moment when balanced against the other factors which weigh against abstention. Finally, there is concurrent jurisdiction over the legal issue.

Given this analysis, one is ineluctably led to the conclusion that *Colorado River Water* abstention is not applicable here.

## C. THE *YOUNGER* DOCTRINE IS NOT APPLICABLE TO THIS CASE

The Plaintiffs addressed the *Younger* doctrine extensively in their Memorandum of Law In Support of Plaintiffs' Motion For Summary Judgment, and those arguments will not be repeated here. However, the Plaintiffs would raise some additional points for the consideration of this Court.

A basic requirement of the *Younger* doctrine is that the Constitutionally infirm conduct of the State official may be corrected in a *single* State court proceeding. *See, Moore v. Sims,* 442 U.S. 415, 436-437; 99 S.Ct. 2371; 60 L. Ed. 2d 994 (1979) (Stephens, J., *dissenting*). As the Defendants appear to recognize, the question presented to this Court cannot be addressed in a *single* State court proceeding, but will arise again and again, in every case pending before the Defendants in which the Plaintiff Fieger is counsel of record. Indeed, among the Defendants'

"parade of horribles" is the spectre or prospect of the Plaintiff Fieger entering an appearance, in other lawyers' cases, simply to disqualify certain of the Defendants from hearing and deciding those cases. The other side of the coin, of course, is that if the Plaintiff Fieger is compelled to raise the issue again and again, he risks further antagonizing the adjudicator. *Stivers v. Pierce,* 71. F.3d 732, 748 (9th Cir. 1995).

## XI.    IN THE SIXTH CIRCUIT, ABSTENTION PRECLUDES THE DISMISSAL OF THE PLAINTIFFS' COMPLAINT

A further flaw in the Defendants' legal arguments is that in the Sixth Circuit, abstention does not result in an order of dismissal. Instead, it results in a stay of proceedings. In *Brindley v. McCullen,* 61 F.3d 507, 509 (6th Cir. 1995), the Court admonished the bench and bar that: "...the appropriate procedure, when abstaining under *Younger,* is to stay the proceedings rather than dismissing the case without prejudice. Issuing a stay avoids the costs of refiling, allows the plaintiffs to retain their place on the court docket, and avoids placing plaintiffs in a sometimes difficult position of refiling their case before the statute of limitations expires." *See also, Habich v. City of Dearborn,* 331 F.3d 524, 534, n. 4 (6th Cir. 2003).

Of course, a stay of proceedings in the circumstances of this case would effectively deprive the Plaintiffs' Federally-guaranteed rights, because the Defendants would free to decide the underlying cases, after which the *Rooker-Feldman* doctrine would divest this Court of all subject matter jurisdiction, at least with respect to the Plaintiffs Gilbert, Graves, and Amedure.

## XII.    THE RULE OF NECESSITY HAS NO APPLICATION TO THE CASE AT BAR

The citation to the "ancient Rule of Necessity" is vacuous and thoroughly unhelpful. The so-called "rule" provides, as Baron Pollock described it, as follows [footnote omitted]: "... the settled rule of law is that, although a judge had better not, if it can be avoided, take part in the

decision of a case in which he [or she] has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise." Sir Frederick Pollock, *A First Book of Jurisprudence* (5[th] ed. 1923).[10]

In *Will v. United States,* 449 U.S. 200; 101 S. Ct. 471; 66 L. Ed. 2d 392 (1980), a prominent Federal Judge in Chicago, Hugh Will, brought a class action lawsuit challenging the constitutionality of certain Acts of Congress which changed the amount of compensation received by every Federal Judge in the United States, including the members of the Supreme Court of the United States. Chief Justice Burger, at the outset, noted the "full agreement of the parties that the ancient Rule of Necessity prevails over § 455." *Id.,* 449 U.S. at 212. Thus, the *Will* Court was concerned strictly with a question of statutory interpretation, and *not Constitutional adjudication. Id.* And here, there is no full agreement that the "Rule of Necessity" trumps the Due Process guarantees of the Fourteenth Amendment.

The so-called "Rule of Necessity" has never been applied, construed, or interpreted by either the Michigan Supreme Court, or the U.S. Court of Appeals for the Sixth Circuit, insofar as the Fourteenth Amendment right to the "due process" of a fair hearing before a fair and impartial tribunal is concerned. Moreover, there is nothing about this case which involves an interpretation or application of 28 U.S.C. § 455. The "Rule of Necessity" has never been elevated to the level of a Constitutional Command.

The Defendants' citation to *Laird v. Tatum,* 409 U.S. 824; 93 S. Ct. 7; 34 L. Ed. 2d 50 (1972) (Rehnquist, J; *in chambers*), presents a quizzical argument by innuendo. First of all, as Justice Rehnquist pointed out in *Laird v. Tatum, supra,* 409 U.S. at 837-838, and re-emphasized

---

[10] Baron Pollock traces this rule to a controverted legend that Pope Gregory once deposed himself. *Id.,* at p. 278.

as Chief Justice in *Microsoft Corp. v. United States,* 530 U.S. 1301; 121 S.Ct. 25; 147 L. Ed. 2d

1048 (2003), there is no procedure, and no precedent, for replacing a recused Justice of the

United States Supreme Court. The same does not hold true for the Michigan Supreme Court.

The Defendant Ferry has the statutory warrant to seat *any* Judge on *any* Court, unless MCL

§ 600.225(1) doesn't mean what it says.

Second, the Defendants are publicly avowed disciples of "textualism." A. Scalia, *A*

*Matter of Interpretation: Federal Courts And The Law* (1997), *passim.* Giving a "textualist"

reading to Canon 3(C) of the Michigan Code of Judicial Conduct, and MCR 2.003(A-B), the

word "judge" does not include the word "Justice." In consequence, under this view, there is no

Court Rule, and no procedural vehicle, for disqualifying a Justice of the Michigan Supreme

Court. If this be true,[11] the Plaintiffs' cause of action brought pursuant to 42 U.S.C. § 1983 *is the*

*only avenue* for Constitutional relief available to the Plaintiffs.

## XIII.  CERTIFICATION IS PREFERABLE TO ABSTENTION

In *Abortion Coalition of Mich. v. Michigan Dept. of Public Health,* 582 F.2d 1279 (6th

Cir. 1978), the Court was faced with a serious Constitutional challenge to a Michigan statute

regulating free-standing out-patient surgical centers. The main question presented was whether

the statute unconstitutionally infringed the operations of abortion clinics, performing abortions

during the first trimester of pregnancy. The statute had not been authoritatively construed in

Michigan. Rather than abstain, the Court certified the question presented to the Michigan

---

[11] This would explain the necessity for Justice Weaver's proposed amendment to MCR 2.003, in *In re, J.K,* 468 Mich. 202, 219-225; 661 N.W.2d 216 (2003) (*per curiam*) (Weaver, J., Nonparticipation Statement), *rehearing denied,* ___ Mich ___; 663 N.W.2d 918, 918-921 (2003) (Weaver, J. Nonparticipation Statement) and *Gilbert v. Daimler Chrysler Corp.* 2003 Mich. LEXIS 2039 (September 17, 2003) (Weaver, J.: Appendix B at **12-13), which would create a procedural vehicle for the disqualification of a Supreme Court Justice.

Supreme Court, and enjoined enforcement of the statute until the question was answered. The Court essentially held that certification was preferable to abstention. *See generally,* Note, *Inter-Jurisdictional Certification: Beyond Abstention Toward Cooperative Judicial Federalism,* 111 U. Penn. L. Rev. 344, 350 (1963); *see also, Geib v. Amoco Oil Co.,* 29 F.3d 1050, 1061 (6th Cir. 1994).

In consequence, if the Defendants are, in reality, contending that MCL §§ 600.225(1); 600.226(1); and Canon 3(C), and MCR 2.003(A-B) have evaded authoritative interpretation, then this Court has the option of enjoining further proceedings in the underlying cases, pending receipt of the answer to the certified question.

### CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, and for the reasons set forth in the Plaintiffs' Memorandum of Law in Support of the Plaintiffs' Motion For Summary Judgment, the Plaintiffs respectfully request this Court to deny the Defendants' Motion to Dismiss, and to grant the Plaintiffs' Motion for Summary Judgment, together with such other and further relief that this Honorable Court deems just and proper in the premises.

Respectfully Submitted,

*RICHARD L. STEINBERG, P.C.*

By: _____
RICHARD L. STEINBERG (P25862)
Attorneys for Plaintiff
1724 Ford Building
615 Griswold Street
Detroit, Michigan 48226-3990
(313) 962-3738

Dated:  October 10, 2003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED